IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PATTY KELLEY,

      Plaintiff,

v.                             Civil Action No. 5:14cv138
                                        (STAMP)
SALLIE MAE, INC.; SLM Corporation;
and NAVIENT SOLUTIONS INC.,

      Defendants.


**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND,
GRANTING MOTION TO COMPEL ARBITRATION, AND
STAYING ACTION DURING ARBITRATION**


I.  Procedural History

     This civil action was removed to this Court from the Circuit Court of Marshall County, West Virginia. In her complaint, the plaintiff, Patty Kelley, alleges that the defendants, Sallie Mae, Inc. ("Sallie Mae"), SLM Corporation ("SLM"), and Navient Solutions, Inc. ("Navient")(collectively, "the defendants"), improperly attempted to collect a debt from her after the defendants were aware that the plaintiff was represented by counsel. The plaintiff asserts causes of action for (1) violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), (2) violations of the West Virginia Computer Crime and Abuse Act ("WVCCAA"), (3) intentional infliction of emotional distress, and (4) invasion of privacy. The underlying debt arose from two Smart Option Student Loans for which the plaintiff was a cosigner for her

daughter who was attending Bethany College in Bethany, West Virginia.

The defendants thereafter removed the action to this Court. In support of the amount in controversy, the defendants state in the notice of removal that "the action is one that may be removed to this Court by the Defendants pursuant to the provisions of Title 28 U.S.C. §§ 1441 and 1446, because the amount in controversy, if proven, appears to exceed the sum or value of $75,000.00, exclusive of costs and interest . . . ." After removal, the defendants filed a motion to compel arbitration. The plaintiffs followed that motion with a motion to remand. Both motions are fully briefed and ripe for review.

## II. Facts

### A. Motion to Remand

In her motion to remand, the plaintiff argues that the defendants have not shown that the amount in controversy exceeds $75,000.00, exclusive of interests and costs. The plaintiff indicates that in her complaint she did not state the value of her claim. The plaintiff contends that the defendants assertion that the amount in controversy exceeds $75,000.00 without any evidence to support it, is a conclusory allegation which is insufficient to meet the defendants' burden.

In response, the defendants assert that the amount in controversy is met. Based on the allegations in the complaint, the

defendants argue that there were at least 16 violations of the WVCCPA from which the plaintiff could recover damages. The defendants assert that, given inflation, the accepted amount for a WVCCPA claim is $4,737.57 per violation. Thus, the defendants argue that this figure alone would meet the amount in controversy requirement. Further, the defendants assert that this must be considered along with the plaintiff's request for the cancellation of her debt which totals $31,506.41. The defendants provided an affidavit from a Navient customer advocate to support the figures they have provided.

In her reply, the plaintiff asserts that the defendants' affidavit should not be considered because it was not provided by the defendants at the time of removal. The plaintiff argues that this Court should not adopt a "remove first, provide evidence later" approach because such an approach is inefficient for (1) the Court, who must now consider a motion to remand and (2) the plaintiff, who must file a motion to remand based on the evidence that exists at the time the notice of removal is filed.

B.  <u>Motion to Compel Arbitration</u>

In their motion, the defendants argue that this action is governed by the Federal Arbitration Act ("FAA") because the two promissory notes and applications that the plaintiff cosigned contained valid arbitration agreements. The defendants assert that

the agreements must be upheld unless they are both procedurally and substantively unconscionable.

In response, the plaintiff asserts that the arbitration agreements are unconscionable and should be invalidated. In the alternative, the plaintiff argues that she is entitled to discovery into arbitrability if the Court finds that the agreements are not facially unenforceable. However, for the following reasons, she argues that the agreements are facially unenforceable:

(1) The underlying notes are adhesion contracts because the plaintiff is an unsophisticated consumer, the terms of the contracts were not explained to her, the contracts were presented on a "take ir or leave it" basis under which the plaintiff was unable to negotiate any of the terms, and they are pre-printed form contracts with arbitration agreements buried at the end of the 8th and 9th pages in small print.

(2) The arbitration agreements are substantively unconscionable because they strip the plaintiff of her statutory right under the WVCCPA to seek attorneys' fees and costs. According to the arbitration agreements, if the plaintiff appeals the administrator's decision, then she would have to pay the administrator's and arbitrator's costs fo the appeal thus stripping away part of her statutory right to attorneys' fees and costs.

(3) The arbitration agreements contain conflicting clauses as to what the plaintiff may recover and thus the defendants cannot show that there was a meeting of the minds because plaintiff could not have formed an intent to agree to conflicting terms. Further, the conflict between these clauses is procedurally unconscionable as a layperson such as the plaintiff would not be able to reconcile the ambiguous agreements.

(4) The arbitration agreements impose unconscionable and burdensome costs on the plaintiff. The appeal costs would require the plaintiff to advance all filing and appeal fees and also be responsible for paying the fees for three arbitrators which discourages the plaintiff

4

from seeking an appeal.  Also, it is unclear from the arbitration agreements what fees and costs the plaintiff will be responsible for if the defendants' motion is granted.  The plaintiff argues that the remedial effect of the WVCCPA would be lost because the plaintiff would be forced to pay exorbitant arbitration costs.

In their reply, the defendants first argue that the arbitration agreements are not contracts of adhesion because the plaintiff had the right to reject the arbitration agreements while preserving the other terms of the promissory notes.  The defendants assert that the weight of controlling authority supports this argument.  Further, the defendants contend that the arbitration agreements only require the plaintiff to pay attorneys' fees and costs if she is not successful on her claims and even then the defendants would be required to consider any good faith request to cover those costs.  As such, the defendants assert that the plaintiff's statutory rights are not abridged and in fact she will have greater rights to recover attorneys' fees in arbitration than in court.  Additionally, the defendants argue that the arbitration costs are not unconscionable as the plaintiff will only pay an up-front fee of $200-$250, less than court fees, and the defendants must give her request to pay fees a good faith consideration.  For the reasons stated above, the defendants contend that the arbitration agreements, or even the loan agreements themselves, should not be invalidated.

Based on the analysis that follows, this Court finds that the plaintiff's motion to remand is denied and the defendants' motion to compel arbitration is granted.

## III. Applicable Law

### A. Motion to Remand

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs pursuant to 28 U.S.C. § 1332(a). The party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. Id.

Although courts strictly construe the statute granting removal jurisdiction, Doe v. Allied Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993), the court is not required "to leave common sense behind" when determining the amount in controversy. Mullens v. Harry's Mobile Homes, 861 F. Supp. 22, 24 (S.D. W. Va. 1994). When the amount in controversy is not apparent on the face of the

plaintiff's complaint, the federal court must attempt to ascertain the amount in controversy by considering the plaintiff's cause of action as alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the record. 14C Charles Allen Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3725 at 73 (3d ed. 1998). However, the court is limited to examining only evidence that was available at the moment the petition for removal was filed. <u>Chase v. Shop 'N Save Warehouse Foods</u>, 110 F.3d 424, 428 (7th Cir. 1997).

B.  <u>Motion to Compel Arbitration</u>

The Federal Arbitration Act ("FAA") applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . ." 9 U.S.C. § 2. When a party seeks enforcement of the arbitration clause of an agreement during proceedings in a district court, a party sufficiently "invoke[s] the full spectrum of remedies under the [Federal Arbitration Act, 9 U.S.C. § 1, <u>et seq</u>. ("FAA")]." <u>Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.</u>, 252 F.3d 707, 710 (4th Cir. 2001).

In order to compel arbitration under the FAA, the law of the United States Court of Appeals for the Fourth Circuit provides that a moving party must "demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an

arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) failure, neglect, or refusal of the [opposing party] to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (citing Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). Further, while federal law determines the arbitrability of issues, "[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." Id. at 501 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

Federal policy generally takes a liberal stance in favor of enforcement of contractual arbitration clauses. See Adkins, 303 F.3d at 500. When determining whether an issue is arbitrable pursuant to a contractual provision, courts are required to "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" Hill v. PeopleSoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

## IV.  Discussion

A.  Motion to Remand

  1.  Consideration of the Defendant's Affidavit

This Court must first determine whether it may consider the affidavit provided with the defendants' response to the motion to

remand.  The plaintiff asserts that this Court may not consider the affidavit as it was not provided with the notice of removal. However, based on the following, this Court finds that it may consider the defendants' affidavit in determining whether the amount in controversy has been met and satisfies the requirements for removal.

In <u>Dart Cherokee Basin Operating Company, LLC, et al. v. Owens</u>, 135 S. Ct. 547 (2014), the Supreme Court of the United States held that, pursuant to § 1446(a), "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  135 S. Ct. at 555.  That plausible allegation requirement, however, is made under the assumption that the plaintiff does not contest that the amount in controversy is satisfied.  If the plaintiff does contest the defendant's plausible allegation, however, removal will be proper "by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional amount."  <u>Id.</u> at 553-54 (quoting 28 U.S.C. § 1446(c)(2)(B) (2011)).  If a "defendant's assertion of the amount in controversy is challenged, . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  <u>Id.</u> at 554.

Although the defendants only made a plain statement regarding the amount in controversy, it appears to be enough to meet the requirements set forth by the Supreme Court in <u>Dart</u>. Thus, because the defendants asserted that the amount-in-controversy was met in their notice of removal, and the plaintiff is now challenging it, this Court must determine by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied. That determination, pursuant to <u>Dart</u>, is completed by reviewing the proof submitted by both sides which includes the defendants' affidavit. This finding comports with previous practice whereby "[c]ourts have observed that the propriety of treating later-filed documents as amendments to a notice of removal depends on the content of the notice of removal and the record as a whole." <u>Carter v. Monsanto Co.</u>, 635 F. Supp. 2d 479, 487 (S.D.W. Va. 2009)(citing <u>USX Corp. v. Adriatic Ins. Co.</u>, 345 F.3d 190, 206 n. 12 (3d Cir.2003); <u>Buell v. Sears, Roebuck & Co.</u>, 321 F.2d 468, 471 (10th Cir.1963)). Accordingly, this Court finds that it may consider the defendants' affidavit that was filed with their response to the motion to remand.

2.  <u>Amount in Controversy</u>

In their response to the motion to remand, the defendants provided an affidavit from Lori Ungvarsky ("Ungvarsky"), a customer advocate for Navient. In her affidavit, Ungvarsky asserts that the plaintiff was called multiple times, at least sixteen, after August

7, 2013. Further, Ungvarsky indicates that the outstanding amount owed on the plaintiff's debts is $31,506.41. The plaintiff does not dispute these assertions in her reply to the motion to remand.

When there is a maximum penalty by statute, it is appropriate to measure the amount in controversy by the maximum and not by what the plaintiff is likely to win. See Brill v. Countrywide Home Loans Inc., 427 F.3d 446, 449 (7th Cir. 2005); Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199 (9th Cir. 2008). This method of measuring the amount in controversy is also the common practice in cases under the WVCCPA which have been removed to federal court. See Knott v. HSBC Card Services Inc., No. 3:10CV82, 2010 WL 35522105 at *4 (N.D. W. Va. Sept. 8, 2010); Maxwell v. Wells Fargo Bank, N.A., No. 2:09-0500, 2009 WL 3293871 (S.D. W. Va. Oct. 9, 2009). As the surrounding case law demonstrates, it is appropriate to use the statutory maximum in estimation of the amount in controversy. See e.g., Woodrum v. Mapother & Mapother P.S.C., Inc., No. 2:10-00478, 2010 WL 3943732 at *4 (W. Va. Oct. 5, 2010); Jefferson v. Quicken Loans, Inc., No. 5:13CV59, 2013 WL 3812099, at *2 (N.D. W. Va. July 19, 2013).

Pursuant to the WVCCPA, penalties for such violations are "not less than one hundred dollars nor more than one thousand dollars." W. Va. Code § 46A-5-101(1).[1] Further, the United States Department

---

[1]On March 31, 2015, several provisions of the WVCCPA were amended. One of which is that statutory damages no longer have a minimum of $100, but still retain a maximum of $1,000. However, to

of Labor Consumer Price Index provides an adjusted maximum penalty of $4,737.57, providing for inflation, as the $1,000.00 maximum was set in 1974. Id.; see Thomas v. FIA Card Services, Nat. Ass'n, 5:14CV79, 2014 WL 4954389 (N.D.W. Va. Oct. 2, 2014). Under the standard cited above, this Court will use the maximum statutory penalty to calculate the amount in controversy in this case given the evidence.

In this case, the defendants have provided evidence that there were at least sixteen calls made to the plaintiff after the alleged date that she obtained counsel. The plaintiff has not provided any evidence to the contrary. Given the evidence, if at least sixteen calls were made, the amount-in-controversy for the alleged WVCCPA violations would exceed $75,000.00, exclusive of interest and costs ($75,801.12). Thus, given the uncontested number of calls, this Court finds by a preponderance of the evidence that the amount-in-controversy exceeds $75,000.00, exclusive of interest and costs.

This finding is further bolstered by the additional claim of the plaintiff that any alleged debt be cancelled. The defendants have asserted, and the plaintiff has not contested, that the plaintiff's outstanding debt is $31,506.41. As such, the amount-in-controversy, taken with the WVCCPA violations claims, would exceed $75,000.00, exclusive of interest and costs.

---

this Court's knowledge, it appears that the relevant amendments to the WVCCPA will not apply until June 2015. See 2015 W. Va. S.B. 542 (West's No. 178).

B.    Motion to Compel Arbitration

The plaintiff only contends that the promissory notes she signed were unconscionable and thus she should not be held to the arbitration agreements contained within those notes.  Thus, this Court finds that, as the plaintiff does not contest the defendants' other claims as to the arbitration agreements, all other aspects of the arbitration agreements are sound.  This Court will therefore only address the unconscionability argument.

West Virginia law provides that "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written." Brown v. Genesis Healthcare Corp. ("Brown II"), 729 S.E.2d 217, 226 (W. Va. 2012).  Analyzing a claim under that doctrine requires an "inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole."  Syl. Pt. 3, Troy Min. Corp. v. Itmann Coal Co., 346 S.E.2d 749 (W. Va. 1986). When assessing a claim of unconscionability, a court "must focus on the relative positions of the parties, the adequacy of the bargaining positions, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." Syl. Pt. 4, Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co. of West Virginia, Inc., 413 S.E.2d 670 (W. Va. 1991) (internal quotations omitted).  The doctrine of unconscionability

may be used in attempting to invalidate an arbitration agreement. Brown I, 724 S.E.2d at syl. pt. 9; see Johnson Controls, Inc. v. Tucker, 729 S.E.2d 808, 815 (W. Va. 2012). The application of traditional contract law defenses, such as unconscionability, makes sense, considering that it is a "fundamental principle that arbitration is a matter of contract." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010).

More specifically, West Virginia law separates a claim of unconscionability into two components: procedural and substantive. Brown II, 729 S.E.2d at 227 (internal citations omitted). A contract term becomes unenforceable if both procedural and substantive unconscionability exist. Id. In assessing whether those two components have been proven, courts "apply a 'sliding scale' in making this determination: the more substantively oppressive a contract term, the less evidence of procedural unconscionability is required" to prove that claim. Id. (internal citations and quotations omitted). Those two components are separately analyzed below.

1.  Procedural Unconscionability

Procedural unconscionability refers to any "inequities, improprieties, or unfairness in the bargaining process and formation of the contract." Brown II, 729 S.E.2d at 227; see Pingley v. Perfection Plus Turbo-Dry, L.L.C., 746 S.E.2d 544, 551 (W. Va. 2013). It requires an examination of certain inadequacies

14

that, when viewed together, "result in a lack of a real and voluntary meeting of the minds of the parties." Pingley, 746 S.E.2d at 551 (quoting Syl. Pt. 17, Brown v. Genesis Healthcare Corp. ("Brown I"), 724 S.E.2d 250 (W. Va. 2011)). Those certain inadequacies include "the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Pingley, 746 S.E.2d at 551 (quoting Brown I, 724 S.E.2d at syl. pt. 17).

In this case, the arbitration agreements are not procedurally unconscionable. After analyzing the language of the arbitration agreements and the facts, it is clear that procedural unconscionability is inapplicable. Regarding the sophistication of the parties, it appears that the plaintiff is an adult who was capable of seeking funding for her daughter's college education. As to the complexity and length of the documents, although the loan documents could be considered lengthy, each loan application stated the following on the first page: "I [the plaintiff] have read the Promissory Note accompanying this application and each applicable Notice to Cosigner and agree to the terms therein." ECF Nos. 8-1 at 2; 8-2 at 2. To the left of that statement, it states in bold, capital letters the following: "CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. . . . NOTICE TO

CUSTOMER (a) DO NOT SIGN THIS BEFORE YOU READ THE PROMISSORY NOTE EVEN IF OTHERWISE ADVISED." Id.  The plaintiff executed those loan applications, including the all capital provision quoted above. Therefore, the plaintiff confirmed that she allegedly reviewed the loan application documents.

Regarding the adhesion of the contract, the plaintiff had the right to reject the arbitration agreements. The arbitration agreements, located within the documents for each loan, state the following:

> To the extent permitted under federal law, [Navient] and [the plaintiff] agree that either party may elect to arbitrate – and require the other party arbitrate – any Claim under the following terms and conditions. This Arbitration Agreement is part of the Signature Student Loan Promissory Note ("Note").
>
> 1. RIGHT TO REJECT: I [the plaintiff] may reject this Arbitration Agreement by mailing a signed rejection notice to P.O. Box 9480 Wilkes-Barre, PA 18773-9480 within 60 days after the date of my first disbursement. Any Rejection Notice must include my name, address, telephone number and loan or account number.

ECF Nos. 8-1 at 10; 8-2 at 11.  That same arbitration agreement was listed on all the documents for each loan.  The plaintiff did not reject that provision although she had the ability to do so and such action would not have impacted her daughter's student loan.

West Virginia law defines a contract of adhesion as "one drafted and imposed by a party of superior strength that leaves subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject

it." <u>Brown II</u>, 729 S.E.2d at 228. Simply reading the definition of a contract of adhesion demonstrates that the arbitration agreements at issue do not satisfy that definition. Here, the plaintiff could have rejected the arbitration agreements without also rejecting the loan contract. <u>State ex rel. Ocwen Loan Servicing v. Webster</u>, 752 S.E.2d 372, 389 (W. Va. 2013)(upholding an arbitration agreement that "contained a plainly worded statement, placed conspicuously above the signature line in all caps, that advised the [plaintiffs] that they could reject the arbitration agreement and the lender would not refuse to complete their loan due to such refusal"). Thus, the arbitration agreements fail to create "no opportunity" to alter their terms, or place the plaintiff in a situation of either adhering to or rejecting the contracts. Therefore, the record shows that the inadequacies necessary to prove procedural unconscionability regarding the arbitration agreements are not present.

    2. <u>Substantive Unconscionability</u>

Notwithstanding the lack of procedural unconscionability, this Court will address the second component for a claim of unconscionability. Substantive unconscionability relates to the "unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." <u>Pingley</u>, 746 S.E.2d at 551 (quoting <u>Brown I</u>, 724 S.E.2d at syl. pt. 19). When assessing substantive unconscionability, the

17

factors that a Court must analyze "vary with the content of the agreement." Pingley, 746 S.E.2d at 551 (internal citations omitted). Therefore, courts should "assess whether a contract provision is substantively unconscionable on a case-by-case basis." Brown I, 724 S.E.2d at 262. Nonetheless, relevant factors to consider include "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Pingley, 746 S.E.2d at 551; see also Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550 (W. Va. 2012); Johnson Controls, Inc., 729 S.E.2d at 808.

Regarding substantive unconscionability, the plaintiff asserts several arguments. First, the plaintiff contends that the arbitration agreement abridges her statutory rights. Here, the plaintiff points to the arbitration agreements' fee allocation for appeals of the arbitration award, which states that the "appealing party will pay the Administrator's and arbitrator's costs of the appeal." Above that provision, an exception applies that states "each party must pay the expense of that party's attorneys, experts and witnesses, regardless of which party prevails in the arbitration." The plaintiff claims that those provisions mean that she cannot obtain attorneys' fees as permitted under the WVCCPA. Therefore, the plaintiff asserts that the alleged abridging of her statutory rights for attorneys' fees means that the arbitration

18

agreement is unconscionable.  Second, the plaintiff claims that the arbitration agreement permits remedies permitted by applicable substantive law, but still limits statutory remedies under the WVCCPA.  According to the plaintiff, that alleged conflict of provisions renders the arbitration agreement unconscionable. Third, the plaintiff contends that the arbitration agreement imposes unconscionable and prohibitive costs. Finally, the plaintiff believes that the unconscionable arbitration agreement taints the entire loan agreement, and thus renders the loan agreement unenforceable.

The plaintiff's arguments, however, do not properly apply the standard for satisfying a claim of unconscionability.  Rather, the conduct of the defendants must be analyzed under the applicable standard provided under West Virginia law.  Applying the above legal standard, the plaintiff has not sufficiently demonstrated that the arbitration agreements were substantively unconscionable.

Regarding commercial reasonableness, the facts do not show any commercially unreasonable terms.  The plaintiff received a loan from the defendants.  In exchange, the plaintiff would pay the principal sum plus interest and fees to the defendants.  The facts regarding that arbitration agreement display nothing unfair about the transaction and fail to raise concerns as to commercial unreasonableness or a public policy violation.

Further, nothing about such an exchange and agreement demonstrates an unfair allocation of risk as to either party. The plaintiff appears to argue that the fee arrangement violates the plaintiff's statutory rights under the WVCCPA. The standard for whether terms of a contract are substantively unconscionable is not proven simply by alleged violations of a statute. Rather, the plaintiff needs to demonstrate that the fee arrangement between the plaintiff and the defendants is overly "one-sided" or unfair, as provided above. The plaintiff does not satisfy that standard.

The plaintiff's allegations may be considered public policy arguments. However, those allegations are unfounded. The agreements in this case contain the following:

> [Navient] will consider (and generally honor) any good faith request to bear the fees charged by the Administrator and the arbitrator. . . . Each party must normally pay the expense of the party's attorneys, expert and witnesses, regardless of which party prevails in the arbitration. Despite the foregoing, you [Navient] will pay all such fees if I [the borrower] prevail in an arbitration where I am the claimant (even if you are not required to pay such fees under applicable law) and will pay all such fees you are required to bear (a) under applicable law; or (b) in order to enforce this Arbitration Agreement.

ECF No. 8-1 at 11, ¶ T6. Under the WVCCPA, the award of fees is discretionary, and is not mandatory. W. Va. Code § 46A-5-104(2014); Chevy Chase Bank v. McCamant, 512 S.E.2d 217, 227 (W. Va. 1998)("By using the word 'may' in conferring upon courts the power to award attorneys' fees, the [West Virginia] Legislature clearly made the granting of [awards of attorneys' fees and costs under the CCPA]

discretionary."). Here, the agreements do not preclude the plaintiff from having her fees covered by the defendants and in fact, under the terms, she would have reprieve if the defendants did not honor any good faith request. Thus, the agreements at issue here do not require the plaintiff to forego any protections that she would normally have under the WVCCPA.

The plaintiff asserts that sections of the arbitration agreements conflict with each other. This Court finds that they do not, if read in conjunction with section T6. Those sections are, in pertinent part, as follows:

> Except as provided in paragraph 6 above, the appealing party will pay the Administrator's and arbitrator's costs of the appeal.
>                      . . .
>
> The arbitrator shall follow applicable substantive law to the extent consistent with the FAA . . . and shall be authorized to award all remedies permitted by applicable substantive law, including, without limitation . . . attorneys' fees and costs.

ECF Nos. 8-1 at 11, ¶ T8-T9; 8-2 at 12, ¶ T8-T9. These sections are not ambiguous nor do they conflict with each other. The first section specifically references section T6 which has been discussed by this Court and found to be consistent with the statutory remedies of the WVCCPA. Thus, even though the first section, T8, may be read by itself as requiring the plaintiff to pay costs for an appeal that are separate from attorneys' fees, T6 allows the plaintiff to seek such costs and requires the defendants consider such a request in good faith. Further, section T9 specifically

21

allows the arbitrator to follow the substantive law under the WVCCPA and any other West Virginia law that may be applicable. This section also allows attorneys' fees and costs. As such, the plaintiff does not lose any of her remedies by entering the arbitration agreements and the sections are not inconsistent.

Given the analysis above, this Court also finds that the costs of arbitration are not unconscionable. As the defendants point out, the plaintiff would be required to pay an initial filing fee of, at maximum, $250.00. This is similar to the fee that she had to pay to the file the state court suit. Further, as reviewed above, any other costs may be submitted to the defendants for a good faith consideration. Finally, the arbitrator may award fees and costs to either party. The Supreme Court of the United States has held that where "a party seeks to invalidate an arbitration agreement on the ground that the arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Randolph, 531 U.S. at 92. The plaintiff has not met that burden as the costs of arbitration are no different than court costs and are not unconscionable.

The plaintiff argues that the unconscionability attached to the arbitration agreements permeates throughout the promissory notes and thus the promissory notes must be wholly invalidated. As this Court has found that the arbitration agreements are not

unconscionable, this Court finds that this argument is without merit.

C.    <u>Alternative Request for Discovery</u>

This Court finds that the plaintiff's alternative request for discovery if this Court were to grant the defendants' motion to compel should be denied.  The purpose of arbitration is to promote efficiency and reduce costs.  <u>Hay Group, Inc. v. E.B.S. Acquisition Corp.</u>, 360 F.3d 404, 409 (3d Cir. 2004)(finding that "arbitration's goal [is to] 'resolv[e] disputes in a timely and cost efficient manner.'") (internal citation omitted).  Thus, this Court finds that those purposes would not be met by allowing the parties to engage in discovery in this Court that it could engage in through the arbitration process.  <u>See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u>, 43 F.3d 922, 929 (4th Cir. 1995)(finding that the decision to grant or deny discovery is generally within the district court's broad discretion).

D.    <u>Stay</u>

The defendants have not requested that this action be stayed while arbitration proceedings are underway.  However, district courts possess inherent power to stay litigation proceedings.  <u>See Landis v. N. Am. Co.</u>, 299 U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); <u>Reed</u>

v. Health and Human Services, 774 F.2d 1270, 1277 (4th Cir. 1985)
(holding that a district court may defer ruling on a petition for
attorneys' fees  pending a final resolution of the merits); see
also Clinton v. Jones, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L.
Ed. 2d 945 (1997) ("The District Court has broad discretion to stay
proceedings as an incident to its power to control its own
docket."). In fact, this power may be exercised sua sponte, should
the circumstances warrant such an exercise of power. Crown Cent.
Petroleum Corp. v. Dept. of Energy, 102 F.R.D. 95, 98 (D. Md. 1984)
(citing Landis, 299 U.S. at 254-55); see Rice v. Astrue, No. 4:06-
CV-02770-GRA, 2010 WL 3607474 at *2 (D. S.C. Sept. 9, 2010)
("Although there has been no request to hold the instant motion in
abeyance, a federal court has the inherent power to stay, sua
sponte, an action before it.").

Given that this Court is granting the motion to compel
arbitration, this Court finds that this action should be stayed
while the parties are engaged in arbitration proceedings. This
Court will require the parties to provide status reports as needed
and to keep this Court apprised of the progress of arbitration.

## V.  Conclusion

Based on the analysis above, the plaintiff's motion to remand
is DENIED. The defendants' motion to compel is GRANTED. Further,
this action is STAYED while arbitration proceedings are underway.
The parties are DIRECTED to submit a status report by **October 15,**

**2015** informing the Court of what has occurred in arbitration and the parties' progress.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    April 14, 2015

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE